# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Rachelle Ruiz-Fane,                                   Case No. 3:19-CV-00112

        Plaintiff

    v.                                            **ORDER**

Lucas County Sheriff John Tharp, *et al.*,

        Defendants.


This is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and analogous provisions of Ohio law, as well as the Family and Medical Leave Act (FMLA), 29 U.S.C. §2615.

Plaintiff, Rachelle Ruiz-Fane, has worked as a Deputy at the Lucas County Sheriff's Office since 2012. After a physical altercation between her and her supervisor, the Sheriff suspended Ruiz-Fane. She alleges that this suspension was discriminatory, that she experienced a hostile work environment, that the Sheriff retaliated against her, and that the Sheriff violated her FMLA rights.

Pending are the parties' cross-motions for summary judgment. (Doc. 42, 46). For the following reasons, I grant defendants' motion with respect to the Title VII disparate treatment, Title VII hostile work environment, Title VII retaliation, and FMLA claims and deny plaintiff's motion with respect to those claims.

Regarding plaintiff's state law disparate treatment, hostile work environment, retaliation, and intentional infliction of emotional distress claims, I decline to exercise supplemental jurisdiction over those claims.[1]

## Background

Plaintiff, Rachelle Ruiz-Fane, is a Mexican American female Deputy Sheriff at the Lucas County Correction Center. (Doc. 1, pgID 5). She has been employed there since October 12, 2012. (*Id.*). In her role as Deputy Sheriff, plaintiff is responsible for helping to maintain security at the jail. (Doc. 45-2, pgID 1258). Her duties include supervising inmates, transporting them inside the jail and to outside locations, and responding to emergency situations involving inmates. (*Id.*; Doc. 37, pgID 203-07).

Plaintiff's direct supervisor was defendant Sergeant David Martin. Defendant Martin served as the command officer for plaintiff's shift, and she reported to him. (Doc. 43, pgID 1211). Defendant Martin was responsible for providing work assignments to corrections officers and deputy sheriffs assigned to his shift, including plaintiff, and for generally maintaining the security of the jail. (*Id.*; Doc. 45-1, pgID 1254).

### 1. Gender-Based Comments

Plaintiff testified that defendant Martin made several offensive comments about female employees at the jail. She claims that he once told her it did not matter how many women were in the incoming class because women are "worthless, we don't do anything, they have enough females working there already." (Doc. 37, pgID 233).

---

[1] Pursuant to 28 U.S.C.A. §1367, I may decline to exercise supplemental jurisdiction over state law claims once I have dismissed all claims over which I had original jurisdiction. *See also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

On another occasion, plaintiff testified that she asked defendant Martin a question during a shakedown, and he said to the other male officers, "there she goes running her mouth, typical woman thing, all she does is talk, talk, talk like a typical woman, never knows how to be quiet, never knows how to obey." (*Id.*, pgID 235).

## 2. Race-Based Comments

Plaintiff also testified that defendant Martin made several racially insensitive comments. She testified that he used the n-word in a briefing while explaining to the other officers that they should not use that word. (*Id.*, pgID 444). Defendant Martin also allegedly made an insensitive comment about an African American child in a video that he was watching. (*Id.*). Plaintiff did not personally hear either of these comments – other employees at the jail told her about them.

## 3. September 12, 2017 Incident

In the early morning hours of September 12, 2017, defendant Martin asked plaintiff to transport a female inmate, Felicia Johnson, from the jail to an external location for a medical evaluation. (Doc. 43, pgID 1212; Doc. 46-1, pgID 1404). The jail's inmate transportation policy requires that a female officer be present for a transport of a female inmate. (Doc. 45-3, pgID 1263).

Plaintiff told defendant Martin that she had issues dealing with Johnson earlier that day. (Doc. 37, pgID 302-03; Doc. 62-10, pgID 2403). Plaintiff testified that Johnson threatened her and refused to listen to her orders, making comments like "you don't know who you're dealing with" and "I'll fuck you up." (Doc. 37, pgID 279). When plaintiff expressed her concerns to defendant Martin, he reassured her that Johnson would be handcuffed and shackled during the transport. (*Id.*, pgID 303).

Plaintiff reported for the transport, and the other officers had already restrained Johnson. (*Id.*, pgID 306). Johnson was verbally abusive toward plaintiff and continued to threaten her. (Doc. 43, pgID 1213). Plaintiff testified that Johnson made fists at her and said, "I'll fuck you up, wait until these cuffs come off." (Doc. 37, pgID 308).

Due to the inmate's volatility, defendant Martin approved a third officer to assist in the transport. (*Id.*, pgID 309). That meant that there were two male officers in addition to plaintiff. (*Id.*, pgID 315-16). One of the male officers informed plaintiff that she would need to ride in the back of the van with Johnson. (*Id.*, pgID 315-16). And once at the facility, plaintiff testified that she would need to accompany Johnson into the bathroom where Johnson would be without shackles. (*Id.*, pgID 316).

Plaintiff felt uncomfortable and believed the situation threatened her safety and the safety of those around her. (Doc. 62-10, pgID 2401). She told defendant Martin that she would not complete the transport. (Doc. 37, pgID 317-18). He responded that she should turn in her gun and badge. (*Id.*, pgID 319).

The parties disagree about the details of what happened next but do agree that there was a physical altercation between plaintiff and defendant Martin. (Doc. 62-10, pgID 2402-03). Defendant Martin states that he approached plaintiff, she placed her hand on his chest to stop him, and he simply removed it. (*Id.*). Plaintiff recalls that while she did put her hand out to signal that defendant Martin should stop walking toward her, she did not touch defendant Martin. (*Id.*). Plaintiff claims that defendant Martin took her arm and twisted it. (*Id.*). She was left with a substantial bruise on her arm after the altercation. (Doc. 46-2, pgID 1432).

A lieutenant then intervened and ordered plaintiff to go home. (Doc. 62-10, pgID 2403).

### 4. Resulting Discipline

Internal Affairs investigated the incident and charged both plaintiff and defendant Martin with various infractions of the Lucas County Sheriff Department's Code of Conduct. (Doc. 45-5, pgID 1270; Doc. 45-11, pgID 1305).

The Sheriff suspended plaintiff for 60 days, finding that she had violated the following rules: Rule 7 – Conduct Unbecoming an Employee of the Lucas County Sheriff's Office, Rule 28 – Following Orders, and Rule 65 – Bearing/Demeanor. (Doc. 45-8, pgID 1297). The Sheriff suspended defendant Martin for 90 days and required him to sign a last chance agreement. (Doc. 37, pgID 532-33; Doc. 43, pgID 1217). The last chance agreement stated that if defendant Martin violated any additional rules or regulations, the Sheriff could terminate him. (Doc. 40, pgID 832).

### 5.  Administrative Complaints

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC) on December 11, 2017. In it, she argued that defendant Martin's conduct during the September 12, 2017 altercation was discriminatory. (Doc. 38-5, pgID 644). She also argued that the subsequent Internal Affairs investigation was biased and that her suspension was retaliatory. (*Id.*, pgID 646).

The OCRC issued a letter of determination on September 6, 2018, finding it "not probable that Respondent has engaged in an unlawful discriminatory practice." (Doc. 45-12, pgID 1309).

Plaintiff requested EEOC review of the OCRC's findings. (Doc. 45-13, pgID 1312.) The EEOC upheld the findings and issued a right to sue letter. (Doc. 45-14, pgID 1319).

### 6.  Subsequent Internal Affairs Actions

After plaintiff filed her charge of discrimination with the OCRC, she had several issues with Internal Affairs that she believes are indicative of retaliation.

On July 2, 2018, Internal Affairs called plaintiff in regarding an assignment she had at a hospital. (Doc. 46-1, pgID 1424-25). During this meeting, plaintiff admitted that her head nodded off during her shift, and the Sheriff suspended her for three days for "lounging." (Doc. 37, pgID 215-16). Plaintiff denies that she fell asleep. (*Id.*).

Plaintiff also testified that Internal Affairs investigated a complaint about her trying to intimidate another officer into moving seats at a briefing. (*Id.*, pgID 217).

On another occasion, plaintiff testified that Internal Affairs called her in to discuss an officer's complaint that plaintiff was bullying her. (*Id.*, pgID 218).

Finally, plaintiff had to complete counseling for allegations that she improperly conducted a pat down. (*Id.*, pgID 243).

### 7. FMLA Leave

In 2014, plaintiff requested FMLA leave for her migraines. (Doc. 40-52, pgID 1184). The Sheriff's Office approved that request on July 21, 2014 and granted her intermittent FMLA leave for the following year. (*Id.*, pgID 1181). The approval letter stated that when plaintiff calls in sick, she must indicate whether she is taking FMLA leave or a sick day. (*Id.*).

On October 18, 2014, one of plaintiff's supervisors informed her that she was being forced over to work another shift. (Doc. 40-49, pgID 1176). Plaintiff refused the force over and consequently, Internal Affairs charged her with a violation of Rule 28 – Following Orders. (*Id.*). Plaintiff testified in her deposition that she refused the force because she had to take her daughter to a doctor's appointment, and she believed this qualified as FMLA leave. (Doc. 37, pgID 266).

Internal Affairs recognized that there was a misunderstanding about her reasons for refusing the force over and only required her to complete counseling. (Doc. 40-50, pgID 1179).

In 2016, plaintiff states that the Sheriff's Office gave her a written warning for "Abuse of Sick Time" when she called in sick for 8 hours but had only 7.36 hours of sick time available. (Doc. 45-15, pg ID 1366; Doc. 46-1, pgID 1428). While plaintiff does not say whether this was FMLA-qualifying leave, she maintains that the Sheriff's Office should have provided her with information about FMLA at the time. (Doc. 46-1, pgID 1428).

### Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant initially must show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In evaluating cross-motions for summary judgment, I "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Summary judgment is proper where "in light of the evidence viewed in the light most favorable to the [nonmovant], no reasonable juror could fail to return a verdict for the [movant]." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

## Discussion

### 1. Disparate Treatment

Plaintiff argues in her motion for summary judgment that defendants treated her differently than male and/or white employees. She claims that this is evident from their insufficient response to the September 2017 altercation with defendant Martin.

Defendants respond that plaintiff has not sufficiently pled a claim of disparate treatment in her complaint, and therefore, I must dismiss it.

Plaintiff counters that she has distinguished between her claims of disparate treatment and hostile work environment in Count I of the complaint by using the term discrimination to describe disparate treatment and harassment to describe hostile work environment.

To survive dismissal, plaintiff's allegations need to be "sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).

A disparate treatment claim requires the plaintiff to establish that (1) she was a member of a protected group, (2) she was qualified for the position, (3) she was subject to an adverse employment decision, and (4) she was replaced by someone outside the protected class, or she was treated differently than similarly situated non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). If the employer can show a legitimate,

nondiscriminatory reason for the adverse employment decision, plaintiff must also show that the given reason is pretext. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).

In examining Count I of plaintiff's complaint, it is obvious that the allegations focus on the elements of a hostile work environment claim, not a disparate treatment claim. Plaintiff describes defendants' purported harassment, using phrases like "hostile," "severe or pervasive," and "unwelcomed harassment" in the allegations supporting Count I. These are phrases used to establish a claim of hostile work environment, not disparate treatment.

Plaintiff does little to support her purported claim of disparate treatment beyond occasionally using the word "discrimination" in the complaint to describe defendants' conduct. For example, she states in Count I that she "was unlawfully discriminated against […] due to her gender, and/or due to her race/color, ethnicity, and/or national origin/ancestry." (Doc. 1, pgID 15).

But such vague references to discrimination are insufficient to state a claim for disparate treatment and to put defendants on notice of that claim. Disparate treatment is not the only form of discrimination.

Moreover, it is well settled that a plaintiff cannot raise a new legal claim in summary judgment briefing, as plaintiff has done here. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). To allow otherwise would "subject defendants to unfair surprise." *Id.*

Therefore, I must dismiss plaintiff's Title VII disparate treatment claim as insufficiently pled.

## 2. Hostile Work Environment

Plaintiff claims that she endured a hostile work environment at the Lucas County Correction Center, including "intimidation, indifference, physical violence, and unfair and unreasonable behaviors." (Doc. 46-1, pgID 1418). In making this claim, plaintiff focuses primarily on the physical altercation with defendant Martin. She also highlights insensitive comments that defendant Martin made about women and racial minorities, as well as other officers' experiences at the jail.

Defendant responds that plaintiff has failed to satisfy two requirements of a hostile work environment claim: that the harassment was based on membership in a protected class and that the harassment was severe or pervasive.

To establish a *prima facie* case of hostile work environment, plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Ejikeme v. Violet*, 307 F. App'x 944, 949 (6th Cir. 2009).

## A.  Unwelcome Harassment

Defendants do not move for summary judgment on the second prong: that plaintiff endured unwelcome harassment. Nonetheless, it is helpful to provide an overview of the harassment that plaintiff claims occurred for the purpose of analyzing the subsequent prongs.

First, plaintiff points to the September 2017 altercation as evidence of harassment because it resulted in actual physical harm to plaintiff. She also claims that defendant Martin's threat to demote her immediately following the incident was harassment.

Further, plaintiff points to the gender-based comments defendant Martin made in her presence and the race-based comments he made in the presence of other officers.

Plaintiff also describes an incident in which a lieutenant lifted the shirt of a Hispanic female officer and exposed her stomach and an assault on a colleague by an African American, male employee.[2]

## B.  Harassment Based on Membership in Protected Class

Defendants assert that there is no evidence connecting the September 2017 incident with plaintiff's membership in a protected class. Rather, it was motivated by plaintiff's failure to follow orders and complete the requested transport.

Plaintiff argues that the September 2017 altercation occurred against the backdrop of the discriminatory comments and actions described in the previous section, and therefore, it was based on her membership in a protected class.

While the parties focus primarily on the question of whether the September 2017 altercation was based on membership in a protected class, it is worth addressing defendant Martin's offensive comments about women and racial minorities as well.

It is clear that defendant Martin's comments to plaintiff about women are based on gender. Saying that women are "worthless" and do not know how to obey a man's orders evinces

---

[2] Plaintiff argues that this African American, male officer was disciplined more quickly and more harshly than defendant Martin, given that he was immediately arrested for the assault, and defendant Martin was only suspended months later. But plaintiff has not clarified how her co-worker's arrest would have contributed to the hostile work environment that she allegedly experienced. She appears to be arguing that the Sheriff treated employees of color less favorably than white employees. But she ignores the fact that two separate entities disciplined these two officers. The criminal justice system and the jail's internal investigation system are not one in the same, and the jail does not have control over whether the authorities prosecute someone for assault. Therefore, this incident is simply not relevant to plaintiff's hostile work environment claim.

obvious animus toward women. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) ("[H]arassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement."). Defendants do not argue otherwise.

It is likewise clear that use of a racial epithet evinces obvious animus toward the members of a particular race. While defendant Martin may have used the n-word in an "instructional" capacity, that does not negate the fact that it is based on race, no matter the context in which he used it.

Regarding the September 2017 incident, however, I agree with defendants that there is insufficient evidence to show that plaintiff's membership in a protected class motivated defendant Martin's actions.

First, there is no direct evidence that discriminatory animus motivated defendant Martin's actions that day. Plaintiff admitted that on the day of the incident, defendant Martin did not use any derogatory terms associated with plaintiff's gender, ethnicity, race, or color. (Doc. 38-1, pgID 450). And plaintiff does not point to any events that day suggesting that plaintiff's membership in a protected class motivated defendant Martin's actions.

Furthermore, plaintiff does not present any direct evidence from after the incident suggesting that her membership in a protected class influenced defendant Martin's treatment of her that day. In fact, plaintiff testified that defendant Martin did not make any inappropriate remarks associated with her gender, ethnicity, race, or color after the September 2017 incident. (Doc. 37, pgID 242-43).

The lack of direct evidence does not end the inquiry, however. This is because "[f]acially neutral incidents may be included in a hostile-work-environment analysis of the totality of the

circumstances when there is some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013).

Here, plaintiff could point to the two comments that defendant Martin made about women as circumstantial evidence that her gender motivated his treatment of her during the September 2017 incident.

While these comments were wholly inappropriate and sexist, they do not establish that defendant Martin acted out of discriminatory animus during the subsequent physical altercation with plaintiff.

Courts that have inferred discriminatory animus from facially neutral incidents have done so where the harassment expressly related to the plaintiff's protected class was much more widespread than two offensive comments. *See id.* at 815 (plaintiff's co-workers at an electrical company constantly called her gender-specific derogatory names, stated that women should not work there, left sexually explicit items laying around, and threw her purse out the window because purses "aren't allowed" in electrical work); *Anderson v. URS Energy & Constr., Inc.*, No. 3:14-CV-02291, 2016 WL 3362085, at *10 (M.D. Tenn.) (plaintiff's co-workers frequently told her to work somewhere traditionally reserved for women, made comments about her physical appearance and voice, and continually taunted her with a gender-based derogatory name).

Such widespread harassment specific to the plaintiff's protected class allows a court to reliably infer that other harassment was based on the protected class as well. But here, where defendant Martin made two offensive, gender-based comments at least several months before the September 2017 altercation, I cannot reasonably draw that inference.

Because there is insufficient evidence connecting the physical altercation to plaintiff's gender, ethnicity, race, or color, I find that the incident was not based on plaintiff's membership in a protected class.

### C. Severe or Pervasive Harassment

To satisfy the fourth prong of her *prima facie* case of hostile work environment, plaintiff must show that "under the totality of the circumstances the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007). I must consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Id.*

While the question of whether conduct is severe or pervasive is a question of fact, I may determine on summary judgment that as a matter of law, the conduct plaintiff complains of is not sufficiently severe or pervasive. *Id.*

Plaintiff first argues that defendant Martin's conduct on September 12, 2017 is alone sufficiently severe to satisfy the fourth prong of her *prima facie* case. She also argues that harassment was pervasive at the Lucas County Correction Center before defendant Martin's termination. She cites defendant Martin's inappropriate comments, the alleged assault on a Hispanic female officer by a lieutenant, and an accusation of assault against an African American, male employee. Plaintiff also refers generally to complaints by female officers of color that she believes the Sheriff did not sufficiently address.

Defendants respond that the September 2017 incident does not meet the standard of "extraordinary severity" required for a single event to create a hostile work environment. They

also argue that the harassment plaintiff identifies was not pervasive because it amounts to "a few random, undated comments," and Title VII is not meant to create a general civility code. (Doc. 63, pgID 2433).

Before beginning an analysis of the totality of circumstances, I must determine which instances of harassment to consider in that analysis. As I explained in the previous section, there is insufficient evidence that the events of September 12, 2017 were based on plaintiff's membership in a protected group. Therefore, I cannot factor that incident into my totality of the circumstances analysis. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (finding that much of the alleged harassment was not based on plaintiff's membership in a protected class and therefore could not be considered in the hostile work environment analysis).

I have already explained why plaintiff has failed to show that the arrest of her co-worker for assault is relevant to her hostile work environment claim. Accordingly, I will not consider that incident in my totality of the circumstances analysis.

That leaves defendant Martin's offensive comments and the alleged assault of a Hispanic female co-worker as supporting plaintiff's hostile work environment claim.

Of these incidents, plaintiff was only present for the two offensive comments that defendant Martin made about women. She heard about the others from her co-workers. And while instances of harassment concerning other members of plaintiff's protected classes can be relevant to plaintiff's experience in a hostile work environment, they have diminished probative value. *See Bryant v. Martinez*, 46 F. App'x 293, 297 (6th Cir. 2002) (noting the diminished probative value of a gender-based comment made about a third party); *Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 262 (6th Cir. 2001) (considering harassment against other female co-workers of which plaintiff was aware during her employment).

In determining the relative weight of harassment not directed at plaintiff, I may consider "the severity and prevalence of the similar acts of harassment, whether the similar acts have been clearly established or are mere conjecture, and the proximity in time of the similar acts to the harassment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008).

Considering the totality of the circumstances, plaintiff has not presented sufficient evidence of severe or pervasive harassment. Her claim rests on four offensive comments and an incident of harassment of a co-worker. She is not able to recall with any specificity when these incidents occurred, stating only that the comments about women were likely made several months before the September 2017 altercation. She did not remember when the incident with her Hispanic, female co-worker occurred or when defendant Martin made either of the race-based comments. Moreover, the alleged physical assault of her co-worker is of diminished probative value because it did not happen to plaintiff.[3]

The Sixth Circuit has explained that offhand comments, "unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment" necessary to establish a hostile work environment claim. *Arnold v. Marous Bros. Const.*, 211 F. App'x 377, 382 (6th Cir. 2006). And while defendant Martin's comments were certainly inappropriate, they were not sufficiently severe or pervasive to meet the demanding standard set by the Sixth Circuit. *See, e.g.*, *Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434, 444 (6th Cir. 2013) (four instances of racial slurs over the course of two years is not severe or pervasive); *Hensman v. City of Riverview*, 316 F. App'x 412, 416 (6th Cir. 2009) (at least five inappropriate sexual comments

_____

[3] Additionally, it is worth noting that plaintiff has not presented evidence of this incident other than her own deposition testimony.

and multiple instances of physical touching by plaintiff's supervisor over six-week period is not severe or pervasive).

Moreover, even if I concluded that the September 2017 altercation between plaintiff and defendant Martin was based on plaintiff's membership in a protected class, it is still doubtful that she could meet the Sixth Circuit standard for severe or pervasive harassment.

The Sixth Circuit has held on multiple occasions that offensive comments, even when combined with inappropriate physical contact, do not meet the severe or pervasive standard. *See Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 120-21 (6th Cir. 2003) (incident in which supervisor grabbed plaintiff by the chest and pushed her into a file cabinet, combined with an offensive remark several months before, is not severe or pervasive); *Burnett v. Tyco Corp.*, 203 F.3d 980, 984 (6th Cir. 2000) (a battery and two offensive remarks over a six-month period of time is not severe or pervasive).

Therefore, I conclude that plaintiff has not presented sufficient evidence from which a reasonable jury could find in her favor on her Title VII hostile work environment claim. I grant defendants' motion for summary judgment on that claim and deny plaintiff's motion.

### 3. Retaliation

Plaintiff next brings a claim of retaliation against defendants, arguing that they retaliated against her because she complained about the safety issues with inmate Johnson's transport, she filed a grievance pursuant to her collective bargaining agreement, she filed charges with the OCRC and EEOC, and she filed this lawsuit.

Plaintiff alleges that defendants' retaliation included her 60-day suspension, physical assault by defendant Martin, improper investigation by Internal Affairs, increase in Internal Affairs charges against her, and being forced to continue working with defendant Martin.

Defendants' response is that plaintiff has failed to connect any of these alleged retaliatory actions to the protected activities that she identifies.

I agree. Plaintiff has not presented sufficient evidence from which a reasonable jury could conclude that there was a causal connection between her protected activities and the alleged retaliation.

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity; (2) the defendant was aware that she engaged in protected activity; (3) after she engaged in protected activity, the defendant took an "adverse employment action" against her; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015).

## A. Protected Activities

Plaintiff identifies several protected activities that she argues form the basis for her retaliation claim. Of those activities, defendants do not dispute that filing a charge with the OCRC, filing a charge with the EEOC, and filing a lawsuit in federal court are protected. However, defendants argue that complaining about safety issues with the transport of inmate Johnson is not a protected activity and note that plaintiff has not identified the specific grievance to which she is referring.

Title VII's anti-retaliation provision states that an employer cannot discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). The provision covers "not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015).

In other words, the purpose of Title VII's retaliation provision is to prevent retaliation in response to complaints about unlawful employment practices.

Plaintiff's complaints about safety issues do not relate to unlawful employment practices, and therefore, they are not protected activities. The concerns that plaintiff expressed on September 12, 2017 related to her personal safety and the safety of the inmate that defendant Martin asked her to transport. Plaintiff was afraid that the inmate might harm her if she were forced to complete the transport. Plaintiff did not express concern that defendants were discriminating against her or engaging in any unlawful employment practices as required to make an activity protected.

Regarding plaintiff's grievance pursuant to her collective bargaining agreement, I agree with defendants that she has not clarified the basis for that grievance. Plaintiff points only to a letter from the union, which states that plaintiff filed a grievance under the collective bargaining agreement. The letter does not provide any detail regarding the grievance and does not say whether plaintiff complained of discrimination in the grievance. (Doc. 45-10, pgID 1303). Without additional evidence, I cannot find that the complaint concerned an unlawful employment practice and was therefore a protected activity.

### B. Causal Connection

To establish the causal connection prong of a retaliation claim, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Factors relevant to causation are "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id.*

Many of the adverse actions that plaintiff identifies occurred before she filed any of her claims with the OCRC, EEOC, or this Court. These include the physical altercation with defendant Martin, investigation by Internal Affairs, and her 60-day suspension.[4] Those activities cannot be causally connected to her protected activities because they occurred before she engaged in the protected activities.

That leaves the increase in Internal Affairs investigations of plaintiff and her continued work with defendant Martin after the physical altercation.[5] While plaintiff's argument regarding the causal connection between these events and her protected activities is somewhat unclear, it appears that she relies on temporal proximity and the fact that Internal Affairs had not investigated her as frequently before the September 2017 altercation.

Plaintiff claims that the Internal Affairs investigations of her were baseless, and therefore, they are evidence of retaliation. While the number of Internal Affairs investigations against plaintiff did seem to increase after she filed charges with the OCRC, plaintiff relies on mere conjecture in arguing that these investigations were retaliatory. In fact, of the four investigations, Internal Affairs disciplined plaintiff for only one. And in that case, plaintiff admitted that her head nodded off during a shift.

Furthermore, as defendants emphasize and plaintiff does not contest, Internal Affairs initiated these investigations in response to complaints from Sheriff's Office employees. Plaintiff's collective bargaining agreement requires Internal Affairs to investigate any formal

---

[4] Plaintiff received her 60-day suspension on October 2, 2017 and filed charges with the OCRC on December 11, 2017. (Doc. 37-1, pgID 426).

[5] Regarding the Internal Affairs investigations of plaintiff, the Sixth Circuit has held repeatedly that "employer investigations into suspected wrongdoing by employees, standing alone, generally do not constitute adverse employment actions." *Arnold v. City of Columbus*, 515 F. App'x 524, 531 (6th Cir. 2013); *see also Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006).

complaints filed against an employee, which apparently is what they did here. (Doc. 62-2, pgID 2324). This undermines plaintiff's argument that Internal Affairs was retaliating against her by initiating these investigations and instead supports that they were simply following protocol.

Plaintiff also complains that she was scheduled to work with defendant Martin after the September 2017 altercation. But plaintiff has not provided evidence that this was retaliatory either. In fact, plaintiff admits that the jail changed her schedule after the altercation so that instead of working with defendant Martin four days per week, she began working with him only two days per week. (Doc. 37, pgID 242). Such a change in schedule does not permit an inference of retaliation.

And regarding temporal proximity, the timing of the events that plaintiff highlights is not particularly compelling. She cannot remember the dates of any of these subsequent investigations except one. And that one occurred in July 2018, approximately seven months after plaintiff first filed her charge of discrimination with the OCRC. This does not do much to bolster plaintiff's claim of retaliation.

Plaintiff has simply not offered sufficient evidence from which a reasonable jury could conclude that there was a causal connection between her protected activities and defendants' alleged retaliatory actions. Therefore, I must grant defendants' motion for summary judgment on the Title VII retaliation claim and deny plaintiff's.

### 4. FMLA Interference and Retaliation

Plaintiff also brings claims for violations of her FMLA rights. She specifically alleges that defendants failed to inform her of her FMLA rights when she took a sick day, and that interfered with her FMLA rights. She also alleges that defendants retaliated against her for

requesting and using FMLA leave when they 1) described an FMLA-qualifying incident as "prior discipline" and 2) forced her to take FMLA leave to avoid working with defendant Martin.

Defendants respond that plaintiff's FMLA claims are procedurally defective, time-barred, and fail on the merits.

## A. FMLA Interference Claim

Plaintiff argues that defendants interfered with her FMLA rights when they did not inform her that her sick day could be FMLA eligible. In 2016, plaintiff called in sick for 8 hours when she only had 7.36 hours of sick time available. The Sheriff's Office gave her a written warning for "Abuse of Sick Time," and plaintiff claims that defendants had a duty to determine whether she was entitled to FMLA leave for that time.

Defendants respond that plaintiff has not presented evidence showing that this was an FMLA-qualifying event and that plaintiff was well aware of her rights under the FMLA, as she had previously requested FMLA leave.

To establish a claim of FMLA interference, plaintiff must show that:

> (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

Plaintiff has failed to present any evidence that she was entitled to leave under the FMLA for her sick day in 2016. While defendants approved her for intermittent FMLA leave in 2014 for her migraines, that approval expired in 2015. The event plaintiff complains of occurred in 2016. And she has not presented supplemental approvals, doctor's notes, or other evidence to show that she was still entitled to FMLA leave at the time of the incident.

Moreover, plaintiff has not presented sufficient evidence from which a reasonable jury could conclude that she gave defendants notice of her intention to take FMLA leave. This is another requirement of an FMLA interference claim.

While an employee need not mention the FMLA when notifying her employer of her intention to take leave, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005).

Plaintiff does not supply any details about how she notified her employer of her intent to take leave for 8 hours on the day in question. It appears that plaintiff simply called in sick. (Doc. 46-1, pg ID 42). While defendants were aware that plaintiff had taken FMLA leave in the past, she did nothing to indicate that her reason for taking leave in this instance related to her FMLA-qualifying condition.

Additionally, "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirements." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013). In the original FMLA approval letter, defendants clarified that "[w]hen you call in sick, you must indicate whether it is FMLA or a sick call off." (Doc. 40-52, pgID 1181). Plaintiff apparently failed to follow these instructions.

Therefore, I grant defendants' motion for summary judgment on the claim of FMLA interference and deny plaintiff's.[6]

---

[6] Defendants also argue that plaintiff's claim is time-barred because there is a two-year statute of limitations under the FMLA. I agree. Plaintiff's claim for FMLA interference accrued on February 8, 2016 when defendants issued her a written warning for "Abuse of Sick Time." *See*

## B. FMLA Retaliation Claim

### i. Reference to FMLA Incidents as Prior Discipline

Plaintiff argues that defendants retaliated against her for taking FMLA leave when they referred to a 2016 FMLA-related incident as "prior discipline" before suspending plaintiff for 60 days and when they referred to a 2014 FMLA-related incident in their response to plaintiff's OCRC brief.[7]

To establish a prima facie case of FMLA retaliation, plaintiff must show: 1) she was carrying out an activity protected by the FMLA, 2) her employer knew she was exercising her rights under the FMLA, 3) the employer took adverse action against her, and 4) a causal link between the protected activity and adverse action. *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 501 (6th Cir. 2017).

Plaintiff argues that Internal Affairs used the 2016 FMLA-related incident as evidence of prior discipline during their review of her role in the September 2017 altercation with defendant Martin. In support of this contention, she points to testimony from Robert Sarahman, an investigator in Internal Affairs, that Internal Affairs keeps disciplinary cards for all employees. (Doc. 40, pgID 953-54).

---

(Doc. 45-15, pgID 1366). Plaintiff filed this lawsuit on January 15, 2019, more than two years after the claim accrued. Therefore, in addition to the substantive grounds described above, I find that plaintiff's FMLA interference claim is time-barred. *See Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002) (upholding dismissal of FMLA claim filed over two years after accrual).

[7] The 2014 incident involved plaintiff refusing a force over because she had to take her daughter to a doctor's appointment. Internal Affairs began an investigation regarding plaintiff's refusal but later recognized that there was a misunderstanding and required that she only complete counseling, which is not formal discipline. The 2016 incident involved plaintiff calling in sick for 8 hours when she only had 7.36 hours of sick time available. The Sheriff's Office gave her a written warning for "Abuse of Sick Time."

And while defendants admit that Internal Affairs reviews those cards while deciding matters of employee discipline, plaintiff has not provided any evidence that the 2016 incident actually factored into her 60-day suspension. None of the findings of the disciplinary review board mention this incident, the letter informing plaintiff of the decision does not mention this incident, and the Internal Affairs summary of charges does not mention this incident. (Doc. 37-1, pgID 423-27; Doc. 40-8, pgID 12).

Without any evidence that the 2016 incident factored into plaintiff's suspension, she cannot show a causal link between a protected activity and an adverse action, as the FMLA requires for a retaliation claim.

Regarding plaintiff's concern about the OCRC brief, defendants stated in the brief that "[t]his is not the only incident of D/S Ruiz-Fane not following orders." (Doc. 46-3, pgID 1436). They went on to describe the 2014 incident where plaintiff refused a force over and Internal Affairs charged plaintiff with violating Rule 28 – Following Orders. Plaintiff maintains that referencing this incident was retaliatory because the Sheriff's Office only gave plaintiff counseling and also acknowledged they had misunderstood her reason for refusing.

While defendants may have omitted the fact that the 2014 investigation did not result in formal discipline in their brief, plaintiff's claim that this was in retaliation for exercising her FMLA rights is dubious. She again has not provided any evidence that there was a causal link between her exercise of FMLA rights in 2014 and defendants' decision to reference that incident, albeit incompletely, in their OCRC brief.

Accordingly, no reasonable jury could find in favor of plaintiff on her FMLA retaliation claim that is based on the 2014 or 2016 incident.

### ii. Shifts with Defendant Martin

Plaintiff also contends that she was forced to use her FMLA time to avoid working with defendant Martin after their physical altercation and that this constitutes FMLA retaliation.

But this claim does not fit within the legal framework for FMLA retaliation. Plaintiff did exercise her FMLA rights in requesting leave so that she did not have to work with defendant Martin. However, she does not argue that defendants retaliated against her for exercising those rights by, for example, refusing to approve the requested time off.

Plaintiff has not identified any adverse action that defendants took in response to her requests, and that is a requirement for an FMLA retaliation claim.

If plaintiff were to argue that the adverse action is defendants' refusal to remove her from defendant Martin's shifts, that argument also fails. She has not identified a causal connection between her exercise of FMLA rights and that decision by defendants. Plaintiff does not claim that defendants refused to change her shifts because she asked for FMLA leave. The two are simply unrelated.

Therefore, I must grant defendants' motion for summary judgment on the FMLA retaliation claims and deny plaintiff's motion.[8]

### 5. Intentional Infliction of Emotional Distress

As explained above, I have declined to exercise supplemental jurisdiction over plaintiff's state law claims, including her intentional infliction of emotional distress claim, pursuant to 28 U.S.C.A. §1367. Therefore, I express no opinion on this Ohio state-law claim.

### Conclusion

---

[8] To the extent plaintiff argues that being forced to continue working with defendant Martin constitutes FMLA interference, that argument also fails. A required element of an FMLA interference claim is that the defendants "denied [plaintiff] FMLA benefits to which she was entitled." *Edgar*, *supra*, 443 F.3d at 507. Plaintiff does not complain that defendants denied her requests but that she felt forced to use FMLA time in the first place.

For the foregoing reasons, it is ORDERED that:

1. Defendants' motion for summary judgment (Doc. 42) as to plaintiff's Title VII disparate treatment, Title VII hostile work environment, Title VII retaliation, and FMLA claims shall be, and hereby is, granted;

2. Plaintiff's motion for summary judgment (Doc. 46) as to her Title VII disparate treatment, Title VII hostile work environment, Title VII retaliation, and FMLA claims shall be, and hereby is, denied;

3. I decline to exercise supplemental jurisdiction over plaintiff's state-law claims; and

4. The Clerk shall mark this matter closed.


So ordered.

James G. Carr
Sr. U.S. District Judge
